IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,　　　　　　　　　　　　No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*　　No. 1:18-cv-00744-WJ-KK

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART UNITED STATES' MOTION TO EXCLUDE
## EXPERT TESTIMONY OF *ALLEN* PLAINTIFFS' EXPERTS
## ROBERT UNSWORTH AND ADAM STACK

The *Allen* Plaintiffs' experts Robert Unsworth and Adam Stack prepared an expert report, the purpose of which "is to assess the financial and economic losses that Navajo farmers and ranchers incurred" due to the release form the Gold King Mine. Doc. 1580-1 at 3, lines 26-27.

The United States moves the Court to exclude the testimony of Mr. Unsworth and Dr. Stack because:

(i)　　They opine only as to the damages of the *Allen* Plaintiffs as a group, not the damages of any individual *Allen* Plaintiff;

(ii)　　They calculated the *Allen* Plaintiffs' damages using simple arithmetic without assessing the reasonableness of claimed losses;

(iii)　　They failed to consider key sources of facts and data;

(iv)　　They failed to apply their own methodology; and

(v)　　Their damage calculations are subject to a wide margin of error.

*See* United States' Motion to Exclude the Expert Testimony of *Allen* Plaintiffs' Experts Robert Unsworth and Adam Stack, Doc. 1580, filed April 19, 2022 ("Motion).

**Admission of Expert Testimony Under Rule 702**

Rule 702, which governs testimony by expert witnesses, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>**(b)** the testimony is based on sufficient facts or data;
>
>**(c)** the testimony is the product of reliable principles and methods; and
>
>**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

>Federal Rule of Evidence 702 requires the district court to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Under Rule 702, the court must first decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. Then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

*Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

**Expert Qualifications**

To perform its gatekeeping function, the Court generally takes two steps. First, it determines whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. The United States does not dispute Mr. Unsworth or Dr. Stack's qualifications, so the Court turns to the second step which is to decide whether their opinions are sufficiently reliable.[1] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*).

---

[1] Mr. Unsworth has been "performing environmental damage assessments for indigenous communities in the United States for three decades." Doc. 1650 at 11, filed May 31, 2022. Dr. Stack is "an anthropologist specializing in Native American issues." Doc. 1552 at 24, ¶ 33, filed April 8, 2022.

**Opinion Reliability**

For the reasons stated below, the Court excludes Mr. Unsworth and Dr. Stack's testimony regarding the total amount of damages to the *Allen* Plaintiffs as a group. Mr. Unsworth and Dr. Stack may testify as to the economic damages of the individual *Allen* Plaintiffs.

<u>Economic Damages of the *Allen* Plaintiffs as a Group versus Individual *Allen* Plaintiffs</u>

The United States contends that the "pertinent inquiry here is: what is the monetary relief to which each *Allen* Plaintiff may be entitled as damages." Motion at 20. The United States notes that Special Master Honorable Alan C. Torgerson has stated: "The *Allen* Plaintiffs, while often referred to as a collective group, are 297 individuals, each with their own claim supported by facts unique to each individual plaintiff." Doc. 586 at 4-5, filed May 7, 2020 (denying *Allen* Plaintiffs' motion to appoint representative Plaintiffs to make settlement-related decisions). The United States argues that Mr. Unsworth and Dr. Stack's testimony will not be helpful to the trier of fact because "they propose to testify only as to the total damage to the *Allen* Plaintiffs as a group. They provide no opinion as to the damage of any individual *Allen* Plaintiff." Motion at 19. Mr. Unsworth and Dr. Stack "estimate that the *Allen* Plaintiffs' total damages, **as a group**, is 'between $7,348,000 and $11,891,000.'" Motion at 6 (emphasis in original).

The *Allen* Plaintiffs contend that "the United States' Motion inaccurately asserts that Mr. Unsworth and Dr. Stack did not calculate individualized damages." Response at 7. The *Allen* Plaintiffs state that Mr. Unsworth and Dr. Stack's Report contain a "very detailed damages spreadsheet" and that Mr. Unsworth and Dr. Stack calculated the damages for each *Allen* Plaintiff." Response at 7-10. The *Allen* Plaintiffs also state:

> The assessment of total damages presented in the Report is not separate and apart from the assessment of individual damages. Rather, it is the sum of their assessments of damages for each individual *Allen* plaintiff, which are based on the information uniquely pertinent to each *Allen* plaintiff as well as information derived from expert assessment of the *Allen* plaintiffs as a group and of the economic context in which they farm or raise livestock.

3

Response at 10.

The Court understands the *Allen* Plaintiffs' statement that the assessment of total damages "is the sum of their assessment of damages for each individual *Allen* Plaintiff, which are based on the information uniquely pertinent to each *Allen* plaintiff." However, the *Allen* Plaintiffs' statement that the assessment of damages for each individual *Allen* Plaintiff is also based on "information derived from expert assessment of the *Allen* plaintiffs as a group" appears to be somewhat circular reasoning: the total damages is the sum of the individual damages which are determined in part by the total damages. If the *Allen* Plaintiffs mean that for some individual *Allen* Plaintiffs who did not have information regarding some of their damages, Mr. Unsworth and Dr. Stack estimated that information based on similar information reported by other *Allen* Plaintiffs, then Mr. Unsworth and Dr. Stack may testify as to how they estimated the missing information. The *Allen* Plaintiffs have not shown that the total damages of the *Allen* Plaintiffs as a group is relevant to each individual *Allen* Plaintiff's damages.

The Court grants the United States' Motion to exclude Mr. Unsworth and Dr. Stack's testimony regarding the total amount of damages to the *Allen* Plaintiffs as a group.

Methodology

The United States argues that Mr. Unsworth and Dr. Stack calculated the *Allen* Plaintiffs' damages using simple arithmetic without assessing the reasonableness of claimed losses. *See* Motion at 8.

Mr. Unsworth and Dr. Stack's calculations of the *Allen* Plaintiffs' damages involved more than "using simple arithmetic." Mr. Unsworth and Dr. Stack "consulted a range of data sources to supplement information provided by the Plaintiffs" including:

> data collected and published by the U.S. Department of Agriculture National Agricultural Statistics Service, the Census Bureau, the Internal Revenue Service, the Federal Reserve, the State of New Mexico, and the Navajo Nation. Additional information about agricultural inputs and costs was obtained from various university extension services. For several data categories, the analysis relied on

4

estimates derived from published information. These include the estimated hourly wages for both nonfarm and agricultural occupations, which were provided by the U.S. Census Bureau and the U.S. Bureau of Labor Statistics. The estimated cost per mile for transportation is the IRS standard mileage rate. *See id.*

Then, using values from sources that are not challenged by the United States, Plaintiffs' experts calculated the damages for each *Allen* Plaintiff from a combination of the following losses:

- The value of crops and livestock lost because of the Blowout and ensuing interruption of the agricultural water supply;

- Costs incurred as a result of efforts to provide replacement water supplies for irrigation and livestock, including equipment and transportation;

- Costs of replacement feed for livestock, including transportation;

- The value of crops and livestock that would have been produced but for concerns about contamination and market stigma caused by the Blowout;

- Costs to restore agricultural lands and equipment damaged or degraded by lack of water supply and disuse resulting from the Blowout;

- Lost wages from other employment due to missed work necessitated by response to the Blowout;

- Costs of replacement food and water for domestic use by the Plaintiff's household; and

- Costs of counseling and/or ceremonies to address emotional distress caused by the Blowout.

Response at 8.

Mr. Unsworth and Dr. Stack's opinions will be helpful because they are based on calculations and information that most untrained laymen are not familiar with.

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert testimony, 5 Vand.L.Rev. 414, 418 (1952).

Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules.

Sufficiency of Facts and Data

The United States contends that "Mr. Unsworth and Dr. Stack failed to consider key sources of facts and data" because they did not review the Standard Form 95[2] for every *Allen*

---

[2] "Standard Form 95" refers to the "administrative claim that the Federal Tort claims Act requires as a prerequisite to suit in federal district court." Motion at 9, n.3.

Plaintiff, failed to speak with any of the *Allen* Plaintiffs and failed to consider the *Allen* Plaintiffs' deposition transcripts. Motion at 10-11.

Mr. Unsworth and Dr. Stack based their calculations on data "primarily taken from the Court-approved questionnaires and the Standard Form 95 ... submitted by each Plaintiff." Motion at 9 (quoting Mr. Unsworth and Dr. Stack's expert report).

> During a Status Conference before the Honorable Alan C. Torgerson, Special Master of this Multi-District Litigation, the United States and the individual Plaintiffs (both the *Allen* and *McDaniel* Plaintiffs) agreed to utilize Plaintiff Questionnaires "in order to alleviate the need for interrogatories" and to otherwise "streamline" the discovery process. The primary goal of the Plaintiff Questionnaires is to enable Defendants to determine damages and assist the parties in meaningful settlement discussion. To that end, the United States and the individual Plaintiffs collaborated to create the [Plaintiff] Questionnaire ... [The revised Plaintiff Questionnaire] "is designed to obtain useful, important, and specific information that would normally be learned through discovery and will position the parties to engage in meaningful settlement discussions.

Doc. 370 at 1, filed November 8, 2019 (unopposed motion to revise Plaintiff Questionnaire). The Special Master Hon. Alan C. Torgerson ordered the individual Plaintiffs to complete a "Plaintiff Questionnaire." Doc. 374, filed November 11, 2019 (with 10-page Plaintiff Questionnaire attached; Plaintiffs must sign a "verification" on the Questionnaire declaring under penalty of perjury that all the information provided is true and correct to the best of Plaintiff's knowledge, information and belief).

The Court finds that Mr. Unsworth and Dr. Stack's opinions, which are based on the information in the Plaintiff Questionnaires, are based on sufficient facts and data. Rule 702 requires that an expert's testimony be based on "sufficient facts or data;" it does not require that the testimony be based on all available facts or data. Fed. R. Evid. 702(b). The Plaintiff Questionnaire was designed, with the participation and agreement of the United States, to obtain information that would normally be learned through discovery.

<u>Failure to Apply Their Own Methodology</u>

The United States asserts that Mr. Unsworth and Dr. Stack failed to apply their own methodology:

> According to their report, Mr. Unsworth and Dr. Stack attempted, whenever possible, to use available quantitative data provided by a plaintiff for that plaintiff's damages calculation and only resorted to interpolation when no such data are available. The Unsworth/Stack Report states, "Where Plaintiffs provide explicit monetary values to describe losses, incorporate those values directly into the analysis." Ex. 1 at 10. If an *Allen* Plaintiff does not provide an explicit monetary value, "interpolate from aggregate information drawn from all claims and compare with supplemental sources of relevant pricing information to estimate monetary losses." *Id. See also* Ex. 2 at 564:21 – 566:24. Mr. Unsworth testified that there were exceptions to this methodology, but "it would be a very specific case if it happened." Ex. 2 at 567:11 – 17.
>
> Contrary to their stated methodology, Mr. Unsworth and Dr. Stack's actual calculations ***used median values to calculate damages for all Allen Plaintiffs—even for plaintiffs who provided quantitative data to describe their own losses***.
> ....
>
> Neither Mr. Unsworth nor Dr. Stack assessed whether plaintiffs who provided quantified data are representative of plaintiffs who did not.

Motion at 12-13 (emphasis in original).

The Court will not exclude Mr. Unsworth and Dr. Stack's testimony regarding their calculation of the individual *Allen* Plaintiffs' damages. The United States appears to challenge the data used in the calculations, i.e. using the median values to calculate damages for individuals who reported quantitative data, not the methodology.

> Reliability is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced. Accordingly, a district court must admit expert testimony as long as it is based on a reliable methodology. It is then for the jury to evaluate the reliability of the underlying data, assumptions, and conclusions.

*In re Urethane Antitrust Litigation*, 768 F.3d 1245, 1263 (10th Cir. 2014).

<u>Margin of Error</u>

The United States asserts that Mr. Unsworth and Dr. Stack's damage calculations are subject to a wide margin of error. *See* Motion at 14.

> Initially, the Unsworth/Stack Report stated that the *Allen* Plaintiffs' total damages range between $9,798,000 and $15,639,000. Ex. 1 at 2. On December 3, 2021, Mr. Unsworth and Dr. Stack revised their report to state that the total damages range

> between $7,348,000 and of $11,891,000, a reduction of approximately 25% on both the high and low figures. *Id.*
>
> Even with Mr. Unsworth and Dr. Stack's revision to the damages total, the difference between their high and low figures is over $4.5 million, meaning the lower figure is nearly 40% less than the highest damage estimate. Ex. 3 at 76:18 – 77:25. Mr. Unsworth and Dr. Stack have not analyzed where within that range the most accurate estimate of damage lies. *See Id.* at 75:16 – 76:10. Therefore, even if the *Allen* Plaintiff group's total damages truly falls within the revised range that Mr. Unsworth and Dr. Stack calculated, a damage figure awarded within that range could still be substantially wrong—at an error rate of up to nearly 40%.

Motion at 14 (noting that the damages total was revised to correct errors).

The United States contends that Mr. Unsworth and Dr. Stack's calculations of the *Allen* Plaintiffs' *total* damages are subject to a wide margin of error. The Court has excluded Mr. Unsworth and Dr. Stack's testimony regarding the *total* amount of damages to the *Allen* Plaintiffs as a group.

Mr. Unsworth and Dr. Stack's Testimony Related to Noneconomic Damages

The *Allen* Plaintiffs contend that the United States does not address or challenge the testimony and opinions from Mr. Unsworth and Dr. Stack unrelated to economic damages that will assist the trier of fact:

> The experts also assessed "the effects and extent of market stigma created by the" Blowout and "the extent to which market stigma for farm and ranch products has impacted and continues to impact the economics of farming and grazing in the affected area." Report at 4. Mr. Unsworth and Dr. Stack further described "the social and cultural importance of farming and ranching activities to Navajo Nation members to provide context for losses to individual and community wellbeing associated with the event." *Id.* at 4. Relative to these assessments, Mr. Unsworth and Dr. Stack concluded the following:
>
> • The event caused Navajo farmers and ranchers who rely on irrigation water supplies from the San Juan River to lose crops and livestock as a result of contamination of the water supply caused by the Blowout.
>
> • The Blowout resulted in persistent market stigma affecting agricultural products from the San Juan River. Market stigma created by the Blowout caused potential buyers to reject or offer lower prices for crops and livestock from this area. This stigma continues to impact the agricultural market.
>
> • Navajo farmers and ranches in the impacted area suspended or reduced operations in the years following the spill due to inability to market or sell their products, or

9

> uncertainty about being able to market or sell their products, in the face of ongoing stigma.
>
> • Long-term suspension of agricultural activities has created a substantial financial and labor burden on producers in order to restore lands and equipment before resuming operations.
>
> • The Blowout has led to ongoing instability and uncertainty in the agricultural water supply. Irrigation diversions on the San Juan have been periodically shut off due to concerns about remobilization of contaminated sediment.
>
> These opinions are relevant and specific to the *Allen* Plaintiffs. The United States' wholesale Motion to exclude Mr. Unsworth and Dr. Stack from testifying at trial is therefore unfounded and reveals the fact that the United States disagrees with the economic conclusions of the experts only, not their methodologies or general opinions.

Response at 23-25.

The United States *did* challenge Mr. Unsworth and Dr. Stack's opinions related to noneconomic damages:

> Mr. Unsworth and Dr. Stack's proposed testimony as to the non-monetary harms to the wellbeing of the *Allen* Plaintiff group will not relate to the circumstances of any discrete plaintiff. Ex. 1 at 4-5; Ex. 3 at 410:10 – 12, 419:23 – 420:16, 423:7 – 15, 424:18 – 426:6, 431:2 – 434: 21, 435:3 – 12. <u>Indeed, in response to a motion for summary judgment, the *Allen* Plaintiffs even said that Mr. Unsworth and Dr. Stack's opinions are "not intended to establish noneconomic damages" of the individual plaintiffs. Dkt. 1552 at 42—43.</u>
>
> This Court has repeatedly excluded proffered expert testimony on damages where the analysis does not speak to a claimant's particular circumstances. *Cruz v. Bridgestone/Firestone*, No. 06-CV-538, 2008 WL 5598439, at *6–7 (D.N.M. 2008) (damages based on lifestyle of Americans was irrelevant to plaintiffs from Mexico); *de Beaudrap v. Werner Enterprises*, 2005 WL 8164191, at *3–4 (D.N.M. 2005) (damages based on healthcare costs in New Mexico irrelevant to plaintiff receiving care in Canada); *Team Tires*, 2003 WL 25683917, at *2–3. *See also See Belcher v. Kelly*, No. 19-CV-3367, 2021 WL 62256, at *4 (D. Colo. 2021) (opinion on reasonableness of medical bills for hypothetical patient irrelevant to whether plaintiff's actual bills "were reasonable and necessary" in his circumstance). For example, in *Team Tires*, an expert estimated damages based on "profit for a business over a given period of time by using national averages" rather than "actual financials" in the case. 2003 WL 25683917, at *3. The court held this was unhelpful because the analysis focused "on numbers that have nothing to do with" the business at issue in the case. *Id.*
>
> Here, Mr. Unsworth and Dr. Stack similarly focus on figures that have nothing to do with any individual *Allen* Plaintiff's case. Stated concretely, Mr. Unsworth and Dr. Stack's opinion that "For the 213 claims brought by Navajo farmers and ranchers that were included in this analysis, the total amount of the financial and economic damages caused by the event is between $7,348,000 and $11,891,000," Ex. 1 at 3, will not further the trier of fact's understanding as to the damage to, for example, plaintiff

10

> Joe C. Allen at his trial. Such an opinion would only cause confusion and prejudice the defendants. *See* Fed. R. Evid. 403. *See also Mosby v. Railey*, No. 5:03-CV-167, 2005 WL 8159837, at *4 (M.D. Fla. 2005) (expert opinion on "pattern" of discrimination irrelevant to whether plaintiff individually suffered discrimination where the "case is not a class action").

Motion at 20-22 (underlining added).

The United States included a quote, underlined in the preceding paragraph, from the *Allen* Plaintiffs' response to a motion for summary judgment. In that response, the *Allen* Plaintiffs stated:

> Weston argues that Plaintiffs' experts do not support the claims for noneconomic damages because (1) "the experts did not particularize their analysis to demonstrate that any individual *Allen* plaintiff has suffered the alleged injuries," Motion at 20, and (2) their opinions "reinforce" that the noneconomic damages are "pure emotional damages." *Id.* at 19. Weston's argument misapprehends the assistance that the experts will lend this Court and the jury. *See* Fed. R. Civ. P. 702(a). The experts will not substitute the Plaintiffs' individualized testimony on noneconomic injuries, but rather provide helpful context for the jury, including information on the historical, religious, and cultural practices related to farming and the River. Such information will assist the jury in understanding the unique cultural importance of farming and water and the reasonableness of decisions and perceptions of the individual Plaintiffs and is not intended to establish noneconomic damages.
>
> As demonstrated in the extensive Plaintiff testimony above, each individual testified to the specific details of their own noneconomic damages, including their loss of use damages and their annoyance and disturbance damages. *See* DMFs 6-30. Such testimony is reasonable and competent evidence of their noneconomic injuries and sufficient to submit these claims to the jury. For the purposes of summary judgment, it is unnecessary to rely on any of the experts' analysis to establish individual plaintiff's noneconomic damages, and as Weston acknowledges, each of these experts "disclaimed any analysis touching upon the individual *Allen* plaintiffs." Motion at 22 ... The opinions of these experts do not establish individual injuries because they never intended to do so. Their opinions merely provide helpful context for the fact finder in determining the individual injuries of the Plaintiffs. Noneconomic damages are the province of the jury and the noneconomic claims of the Plaintiff should be submitted for such a determination based on their testimony regarding their noneconomic injuries. *See Nichols v. Burlington N. & Santa Fe Ry. Co.*, 148 P.3d 212, 217 (Colo. App. 2006) ("damages . . . is a matter within the sole province of the jury").

11

*Allen* Plaintiffs' Response to Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss the Bellwether *Allen* Plaintiffs' Claims for Noneconomic Damages,[3] Doc. 1552 at 42-43, filed April 8, 2022 (addressing Weston's arguments regarding *Allen* Plaintiffs' experts Mr. Unsworth, Dr. Stack and Dr. Chief).

The Court grants the United States' motion to exclude Mr. Unsworth and Dr. Stack's opinions regarding noneconomic damages because those opinions will not be helpful to the jury. Colorado law allows for noneconomic damages of annoyance and discomfort. *See Hendricks v. Allied Waste Transp.*, Inc., 282 P.3d 520, 524-525 (Colo. App. 2012). The "annoyance and discomfort for which damages may be recovered on nuisance and trespass claims generally refers to distress arising out of physical discomfort, irritation, or inconvenience" caused by the tortious acts. *Id.* (stating plaintiffs are not entitled to recover for emotional distress). The *Allen* Plaintiffs stated that "each individual testified to the specific details of their own noneconomic damages, including their loss of use damages and their annoyance and disturbance damages." The *Allen* Plaintiffs also stated Mr. Unsworth and Dr. Stack's opinions "do not establish individual injuries ... Their opinions merely provide helpful context for the fact finder in determining the individual injuries of the Plaintiffs." Mr. Unsworth and Dr. Stack did not perform any analysis regarding the individual *Allen* Plaintiffs' annoyance and discomfort damages. It appears that Mr. Unsworth and Dr. Stack's opinions providing context for the individual *Allen* Plaintiffs' testimony regarding their annoyance and discomfort are essentially vouching for the truthfulness of the individual *Allen* Plaintiffs. *See United States v. Mangan*, 756 Fed.Appx. 807, 813 (10th Cir. 2018) ("This court has also held that 'expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations,

---

[3] The Court granted in part Weston Solutions, Inc.'s Motion for Partial Summary Judgment to Dismiss the Bellwether *Allen* Plaintiffs' Claims for Noneconomic Damages. See Doc. 1777, filed August 11, 2022.

and therefore does not assist the trier of fact....'") (quoting *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)).  A jury is capable of understanding testimony regarding issues such as physical discomfort, irritation and inconvenience without an expert's help.

*Daubert* Hearing

The *Allen* Plaintiffs request a *Daubert* hearing prior to a ruling on the United States' Motion to exclude Mr. Unsworth and Dr. Stack's testimony.  *See* Response at 25.  Because the Court is allowing the testimony of Mr. Unsworth and Dr. Stack regarding each individual *Allen* Plaintiff's economic damages, the Court denies the *Allen* Plaintiffs' request for a *Daubert* hearing.

**IT IS ORDERED** that the United States' Motion to Exclude the Expert Testimony of *Allen* Plaintiffs' Experts Robert Unsworth and Adam Stack, Doc. 1580, filed April 19, 2022, is **GRANTED in part and DENIED in part** as follows:

(i) The Court grants the United States' Motion to exclude Mr. Unsworth and Dr. Stack's testimony regarding the total amount of damages to the *Allen* Plaintiffs as a group.

(ii) The Court denies the United States' Motion to exclude Mr. Unsworth and Dr. Stack's testimony regarding the economic damages of the individual *Allen* Plaintiffs.

(iii) The Court grants the United States' motion to exclude Mr. Unsworth and Dr. Stack's testimony regarding non-economic damages.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE